### SHARPE V. SOUTHERN RAILWAY COMPANY.

(Filed June 10, 1902.)

1. DAMAGES—*Negligence—Profits—Contracts.*

    In an action against a railroad company for failure to deliver machinery according to contract, profits become a measure of damages only where they are within the contemplation of the contracting parties and can be reasonably ascertained by calculation.

2. DAMAGES—*Measure of—Negligence—Contracts.*

    In an action against a railroad company for failure to deliver machinery according to contract, the measure of damages is the legal interest on the capital invested, unemployed employees, and other damages the direct and necessary result of the negligence.

ACTION by J. M. Sharpe against the Southern Railway Company, heard by Judge *A. L. Coble* and a jury, at November Term, 1901, of the Superior Court of IREDELL County. From a judgment for the plaintiff, the defendant appealed.

*Long & Nicholson,* for the plaintiff.
*L. C. Caldwell,* for the defendant.

COOK, J.    Profits become a measure of damages only when they were within the contemplation of the contracting parties and the data of estimation so definite and certain that they

can be ascertained reasonably by calculation; in which case the party in fault must have had notice, either of the nature of the contract itself, or by explanation of the circumstances at the time the contract was made, that such damages would ensue from non-performance. *Railroad Co. v. Ragsdale,* 46 Miss., 458; *Pender Lumber Co. v. Iron Works,* at this term; *Mace v. Ramsey,* 74 N. C., 11. It is not alleged in the complaint, nor shown by the proof, that plaintiff lost any definite and certain profit by the stopping of his mill; nor that the contract was such as to inform defendant that any loss of special profit would ensue to plaintiff by its breach in negligently delaying the shipment and delivery of the machinery, cog-wheel and cogs.

The injury sustained is alleged to have resulted from plaintiff's inability to operate his flouring mill for the want of a cog-wheel, and some cogs which he had ordered to be sent to him from the factory in Pennsylvania, and which were negligently delayed in their delivery by defendant company. His mill had been in successful operation, but the cog-wheel and some cogs broke, and he did not have others to supply their place, and could get such as he needed only from the factory.

By reason of the alleged negligence of defendant the mill was stopped from work a month or more, causing a loss to plaintiff on account of expenses incurred in trying to get his machinery, idleness of his mill, expense of keeping his laborers, etc.

To show his loss resulting from the non-use of the mill, his Honor admitted evidence, over defendant's objection, to show what the profits of the mill would have been during that time if the mill had been at work, as appears from the following questions, and answers, viz:

"Q. What was the damage to you in stopping mill from the 3d of February to 23d of March? What would have been your net profits on your capital during this particular time,

counting your capital invested, the custom you had at suspension, wheat on hand, deliveries to be made and condition of things at the mill at this time?

"A. The lightest months are from May up till harvest; this would be two months and a half; witness means by harvest, threshing time. Witness would say his net profits during this particular time would have been about 12½ per cent."

R. R. Hill, plaintiff's witness, testified:

"Q. Taking into consideration the capital invested, your opportunity to know the custom and business operation of the mill, the character of the mill site, and everything you know in connection with the value of the property and its operations, state your judgment as to the loss likely to be incurred by plaintiff if mill was suspended from 3d of February to 23d of March.

"A. Witness should think, from witness' knowledge of the work he was doing, that $250 or $300 per month would be a very low estimate."

For the error in admitting this evidence a new trial must be awarded. What the profits would have been during that interim would have depended upon the quantity and quality of grain brought to it; regularity with which it was brought; convenience and caprice of the patrons; price of the flour; opportunity of selling and collecting the price for same, and other contingencies, all of which were uncertain, conditional and indeterminate, and failed to furnish data upon which a reasonably accurate estimate might be made. The facts in this case are very similar to those in *Foard v. Railroad Co.,* 53 N. C., 235, 78 Am. Dec., 277, where a part of the machinery, a steam pipe, was negligently delayed by the railroad company on account of which the mill was left idle for some length of time. There the Court held that the profits which the mill would have made would be too vague, indeterminate and uncertain to be correctly estimated; and held

the measure of damages to be the legal interest on the capital invested, expenses incurred in endeavoring to get the delayed machinery, of unemployed employees and such other damages as were the direct and necessary result of defendant's negligence, to which rule we still adhere.

Therefore, his Honor erred in admitting evidence to show such special or extraordinary profits or income, but should have allowed legal interest on the capital invested, etc., as is held in *Foard v. Railroad, supra.*

For the error in admitting such evidence a new trial is awarded.

New trial.