HARPER FURNITURE COMPANY v. SOUTHERN EXPRESS COMPANY.

(Filed 29 May, 1908.)

1. **Carriers of Freight—Express—Measure of Damages—Profits.**

   In an action against an express company for damages arising from a wrongful delay in the shipment of an engine shaft, whereby plaintiff's factory was necessarily stopped in its operation, evidence tending to show as a measure of damages the current profits is, as a general rule, incompetent.

2. **Carriers of Freight—Express—Measure of Damages—Special Circumstances—Implied Notice.**

   When goods are shipped for a special purpose or for present use it is not always necessary that those facts should be mentioned in the negotiations, or in express terms made a part of the contract; for, when they are of such a character that the parties may be fairly supposed to have them in contemplation in making the contract, such special facts become relevant in determining the question of damages in a suit against the carrier for wrongful delay, when they naturally and proximately follow from the breach of duty.

3. **Same—Questions for Jury.**

   The plaintiff caused to be shipped to its own address by express an engine shaft weighing not less than 650 pounds, from Erie, Pa., to Lenoir, N. C. The plaintiff's name indicated its business as that of manufacturing furniture. Upon the measure of damages in a suit against the express company for wrongful delay: *Held,* (1) that the express company was fixed with implied notice of the facts and circumstances under which special

damages necessarily arose to plaintiff from the stopping of its factory on account of the delay; (*a*) the unusual shipment by express indicated urgency; (*b*) the name of the consignee indicated the purpose for which the shipment was needed; (*c*) the shaft indicated that it was necessary to the working of the engine to run the machinery, and (*d*) the size of the shaft was evidence of the power of the engine required to work the machinery; (2) the measure of damages was the interest on capital invested and unproductive for the time, and, when applicable, the pay of idle and necessarily unemployed hands, with such other expenses reasonably referable to defendant's wrong, including an outlay of plaintiff in a reasonable effort to minimize the loss; (3) the question upon the facts presented was one for the jury.

WALKER and BROWN, JJ., dissenting.

ACTION to recover damages for wrongful delay in the shipment of goods, tried before. *Ward, J.,* and a jury, at November Term, 1907, of CALDWELL.

There was evidence tending to show that plaintiff was a firm engaged in the manufacture of furniture, having its mill at Lenoir, N. C.; that on or about 21 October, 1905, the Erie City Iron Works, of Erie City, Pa., shipped to plaintiff, as consignee, at Lenoir, N. C., an engine shaft, of a given kind, weighing something like 650 pounds; that pursuant to the order of plaintiff company the shipment was made by express, over a line of connecting carriers between the two points, including the defendant, and the shaft was delivered at Lenoir, N. C., by defendant company on 9 November, 1905, indicating a wrongful delay in the shipment of something like two weeks. There was further evidence tending to show that the furniture factory of plaintiff company for which the engine shaft had been ordered was necessarily closed down during the time of wrongful delay, and that by reason of this loss of time in operating the factory the plaintiff company suffered damages to the amount of $200 and more, arising from wages paid idle hands and other costs incident to the delay, and interest on the amount of capital invested in the mill and unproductive during said time. The character, capacity and amount invested in the mill were

shown as data for estimating the damage suffered, and it was proved that the full product of the mill had been already sold for the period and at a profit.    It was further shown that, as soon as it was disclosed that the shipment was delayed, plaintiff company immediately duplicated the order, and both shafts were delivered at the same time, 9 November.

Plaintiff offered to show the *amount* of profit which the mill could have realized during the time of delay, but the evidence was held to be incompetent, and the plaintiff excepted.    At the close of the testimony the court intimated an opinion that, on the evidence, if believed, only nominal damages could be recovered, and in deference to this intimation plaintiff submitted to a nonsuit and appealed.

*Jones & Whisnant* for plaintiff.
*W. C. Newland* for defendant.

HOKE, J., after stating the case:  The decisions of this State are to the effect that the current profits of a going manufacturing enterprise, which are dependent on the varying cost of labor and material and the fluctuations of the market value of the product, as a general rule, are too uncertain to form the basis of an award of damages in breaches of contract affecting the operation of the plant, and the better rule in such cases, when it appears that substantial damages are recoverable, is that such damages shall be ascertained on the basis of interest on the capital invested which is unproductive for the time, with the addition, under certain circumstances, of the pay of hands idle and necessarily unemployed, and some other incidental expenses reasonably referable to the defendant's wrong, which may at times include an outlay in the reasonable effort to reduce or minimize the loss.    No doubt there are cases where the average rental value of a business building or a given machine may afford data for a correct admeasurement of damages, but in plants of the kind indicated this rental value is so connected with or dependent upon the fluctuation

of the markets that it has been considered with us as the safer rule in enterprises of the kind stated to adopt the interest on the capital invested and unproductive for the time, with other incidental costs, as the correct method of adjustment. The Judge below therefore made a correct ruling in rejecting the evidence offered tending to show the current profits of the plaintiff's mill. *Lumber Co. v. Iron Works,* 130 N. C., 584; *Sharpe v. Railroad,* 130 N. C., 613; *Rocky Mount Mills v. Railroad,* 119 N. C., 693; *Foard v. Railroad,* 53 N. C., 235; *Boyle v. Reeder,* 23 N. C., 607.

We are of opinion, however, that there was error in holding that, on the facts appearing from the evidence, the plaintiff could in any event recover only nominal damages. The plaintiff complains of, and offers evidence tending to show, a breach of contract of carriage, and, as in other cases of breach of contract, it should ordinarily be allowed to recover the damages naturally incident to the breach, and which may be reasonably supposed to have been in the minds of the parties at the time the contract was made. Where the goods shipped have a market value, and there is nothing to indicate the specific purpose for which they were ordered, these damages are usually the difference in the market value of the goods at the time fixed for delivery and that when they were in fact delivered. We have so held in the case of *Davidson Development Co. v. Railroad,* 147 N. C., 503, and *Lee v. Railroad,* 136 N. C., 533, is to the same effect. When, however, the goods are ordered for a special purpose or for present use in a given way, and these facts are known to the carrier, he is responsible for the damages fairly attributable to the delay and in reference to the purpose or the use indicated. And it is not necessary always that those facts should be mentioned in the negotiations, or in express terms made a part of the contract, but when they are known to the carrier under such circumstances, or they are of such a character that the parties may be fairly supposed to have them in contemplation

in making the contract, such special facts become relevant in determining the question of damages. Moore on Carriers, p. 425; Hutchinson on Carriers, sec. 1367.

In the citation from Hutchinson, after stating the general rule to be the difference in the market value of the goods, the author says: "But there may be circumstances under which the application of this rule would be inequitable. There may be, and frequently are, cases in which for special reasons the shipper may desire that the transportation of his goods may be hastened; and if with a knowledge of these circumstances the carrier should unreasonably delay the carriage, or if, having expressly contracted to carry them within a given time or for a given purpose, he should negligently delay them beyond that time or so as to defeat that purpose, the difference in the value of the goods at the time of their actual arrival and at the time when they should have been delivered may prove a very inadequate recompense to their owner."

The same principle is well stated by *Bramley, L. J.,* in the case of *Hydraulic Co. v. McHaffie et al.,* 4 Q. B. Div., 78-79, p. 670, an action for damages for delay in constructing a machine, as follows: "The fact that a binding agreement has been arrived at does not of itself create a responsibility for all the injury following from a breach of it. The wrongdoer is *prima facie* only liable for the natural and ordinary consequences of the breach; but where, at the time of entering into the contract, both parties knew and contemplated that if a breach is committed some injury will occur in addition to the natural and ordinary consequences of the breach, the person committing the breach will be liable to give compensation or damages on the occurrence of the injury." This limitation on the general rule as to the amount of damages recoverable for wrongful delay in the shipment of goods, being itself an application of the third rule laid down in the case of *Hadley v. Baxendale,* Woods Mayne on Damages, p. 21, is frequently presented in cases involving the making and ship-

ment of machinery. In fact, these are the cases which usually call for the application of the principle stated. Many instances of such application are afforded in the decisions in our own State, as in *Boyle v. Reeder, supra; Foard v. Railroad, supra; Rocky Mount Mills v. Railroad, supra; Sharpe v. Railroad, supra.* See, also, *Mace v. Ramsey,* 74 N. C., 11; *Neal v. Hardware Co.,* 122 N. C., 104. And well-considered cases in other jurisdictions are to like effect: *Simpson v. Railway,* L. B. Div. 1, 75-76, p. 274; *Corey v. Iron Works,* 3 L. R., 67-68, p. 181; *Gee v. Railroad,* 6 Exch., 1860, 210; *Die Elbinger v. Armstrong,* 92 Q. B., 73-74, p. 473; *Railway v. Ragsdale,* 14 Miss., 460; *Griffin v. Clover,* 16 N. Y., 489; *Priestly v. Railroad,* 26 Ill., 205; *Railway v. Pritchard & Co.,* 77 Ga., 412.

In *Simpson's case, supra,* it appeared that plaintiff, a manufacturer of cattle-spice and other substances, was in the habit of making an exhibit of samples of his goods in the grounds of certain cattle shows going on in different sections of the country. On the trial, before *Cockburn, C. J.,* at Spring Assizes, 1875, it was proved: "On the 18th of July, the Bedford show being about to end, and a similar show at Newcastle being about to be held on the 22d, 23d and 24th of July, where the plaintiff desired to exhibit his goods, the plaintiff, by his son, who was in charge of the show tent and samples, made with the defendants' agent a contract for carriage of the samples. The evidence as to the terms of the contract was that a consignment note was filled up by the plaintiff's son, consigning the goods as 'boxes of sundries' to 'Simpson & Co., the show ground, Newcastle-òn-Tyne,' and that he endorsed the note, 'Must be at Newcastle on Monday, certain,' meaning the next Monday, the 20th of July. Nothing was expressly said as to the plaintiff's intention to exhibit the goods at Newcastle or as to the goods being samples. The goods did not arrive till several days after time and when the show was over." On the trial the undisputed damages were

paid into court, with verdict for £20 additional to cover special damages, should the court be of opinion that such damages were recoverable. Rule No. 51 argued before Q. B. Div., before *Cockburn, C. J., Mellor* and *Field, L. JJ.* The reported case proceeds as follows:

"(*Field, J.,* referred to *Watson v. Ambergate Railway Co.* [7].)

"*Gates, Q. C.,* and *C. H. Anderson,* in support of the rule. 'The argument for the plaintiff goes further than any decided case. The defendants ought to have been told that the goods were samples. *Woodger v. Great Western Railway Co.* (8).'

"(*Field, J.:* 'Must we not infer as a matter of fact that notice of their being samples was given?')

"Counsel: '*Great Western Railway Co. v. Redmayne* (1) shows that distinct notice must be given.'

"(*Cockburn, C. J.:* 'Knowledge of circumstances from which the purpose would naturally be inferred is sufficient without express notice of the purpose itself.')

"Counsel: 'As to the loss of profits, such profits as these have never been held recoverable.'

"(*Cockburn, C. J.:* 'Can it be disputed that these profits would have been recoverable if an express stipulation had been made that the goods should be delivered by a particular day and the defendants had been told what the result of non-delivery would be?')

"Counsel: 'That might be disputed.'

"*Cockburn, C. J.:* 'I am of opinion that this rule must be discharged. The law as it is to be found in the reported cases has fluctuated; but the principle is now settled that, whenever either the object of the sender is especially brought to the notice of the carrier or circumstances are known to the carrier from which the object ought in reason to be inferred, so that the object may be taken to have been within the contemplation of both parties, damages may be recovered for the natural consequences of the failure of that object. The plain-

tiff in the present case is in the habit of going about the country exhibiting his cattle-spice at shows to attract purchasers. The defendants had an agent on the ground at the Bedford agricultural show, where this contract was made, for the purpose of drawing custom to their line, and their agent must have known that the plaintiff had been exhibiting these goods and that they were being sent to Newcastle for the same purpose. I therefore cannot doubt that there was in this case common knowledge of the object in view. As to the supposed impossibility of ascertaining the damages, I think there is no such impossibility; to some extent, no doubt, they must be matter of speculation, but that is no reason for not awarding any damages at all.'

"*Mellor, J.:* 'I am of the same opinion. As a juryman I come to the same conclusion that the clerk of the defendants had notice of the object for which the goods were being sent. As to the difficulty of ascertaining the amount of profits which the plaintiff can be supposed to have lost, that is not a matter upon which we have to trouble ourselves.'

"*Field, J.:* 'I am of the same opinion. I apprehend that for a breach of contract a plaintiff is entitled to recover for damages naturally following under circumstances known to both the parties. In this case, inasmuch as railway companies do not often bind themselves to deliver by a particular day, the defendants' attention would be attracted by the stipulation which was made to that effect. Then, where was the contract made? Upon a show ground. To what place was it the goods were to be sent? To a similar show ground. The inference from which would naturally be that the goods were being sent for the purpose of being shown there. Further, if the defendants' agent did not so understand the matter, he might have been called to say so, but that was not done. Therefore I infer, as judge of fact, that both parties were aware of the circumstances with a view to which the plaintiff was contracting, and that they were made the basis of the contract.' "

In the case of *Gee v. Railway, supra,* shipment of cotton for use in a mill, special damages were disallowed, but the Court held that, if it had appeared that defendant had knowledge of the purpose for which the cotton was required, and that stopping the mill would follow from delay, the special damages could be recovered.

In *Priestly's case, supra,* damages were allowed for the use of machinery during the time it was wrongfully delayed in shipment. On the trial below only nominal damages had been allowed. On appeal, *Breese, J.,* for the appellate Court, said: "The principle announced by the court in its instruction, and which determined the case, the jury finding nominal damages only, is not the law. The proposition cannot be entertained for a moment that, under a contract to deliver in a reasonable time valuable machinery, such as described in the declaration, the difference in the market value of such machinery at the time it was in fact delivered and when it should have been delivered is all the damage the owner of the machinery is entitled to claim. If this was the measure there could be no great incentive to carriers to perform promptly a contract for the delivery of such articles, as they are not liable to deteriorate in a few days or months. As to perishable articles of fluctuating value, as grain, live stock and such like, this rule is doubtless the true one, and has been recognized by this Court in the case of *Sangamon and Morgan County Railroad Co. v. Henry,* 14 Ill., 156. Where the property to be carried and delivered is not of a perishable nature and is not a common or ordinary object of sale in market and subject to its fluctuations, but is designed for a special purpose in a special business, the rule is very different; but in both cases adequate indemnity should be offered the plaintiff for the loss he has sustained."

In *Railway v. Pritchard, supra,* damages were allowed for injury caused by wrongful delay in shipping a still worm for a turpentine distillery. The elements of damages

recovered in this case are thus stated in the opinion: "During all the time (of the delay) their machinery and the hands employed in running it were idle, and the tree boxes from which the crude gum was gathered had run over and much of it was wasted for the want of barrels in which to deposit it, and such loss would not have occurred had the worm come to hand at the proper time and the plaintiff been enabled to use the still. The principal loss was in the crude turpentine, estimated at eighty-six barrels, worth $4 per barrel. There was a verdict for the entire amount of damages, less $16."

In *Ragsdale's case, supra,* wrongful delay in shipping a boiler required for the operation of certain machinery, profits of the enterprise were disallowed as a proper basis of damages, and it was held that the cost of hands necessarily kept unemployed by reason of delay, with interest on capital unproductive for the time, was the correct rule for award of the damages.

And in the case of our own Court (*Neal v. Hardware Co., supra*) damages were allowed for loss of a tobacco crop, on failure to furnish, as per contract, at the stipulated time, certain flues to use in curing tobacco. It was contended that no special damages could be recovered, inasmuch as plaintiff failed to show that defendant had knowledge that such damages would result from a failure to deliver the flues. But the Court held that it was a matter of common knowledge in localities where tobacco is cultivated that if it is not cut and cured in apt time serious loss is the necessary consequence, and such knowledge would be assumed against defendant engaged in manufacturing the flues and his agent engaged in selling the same. A proper application of the doctrine declared and approved by these authorities will establish the position that, on the facts appearing in evidence, if the defendant's responsibility for this delay should be established, the plaintiff is entitled to recover compensatory damages, and

the question of the amount should be referred to the jury, on the principles heretofore indicated.

The plaintiffs were a firm engaged in the manufacture and sale of furniture; of this the title of the firm, consignee in the bill of lading, taken in connection with the character of the implement ordered and shipped, would give reasonable notice. In this day and time certainly it is a matter of common knowledge that an engine shaft is the part by which the power of the engine is applied to the operating machinery; that it is essential and necessary for the purpose, and without it the engine itself and the machinery dependent upon it are for the time out of action. The kind and size and weight of the shaft would give notice of at least the maximum capacity of the engine. As we said on the former appeal of this cause, "We may safely assume that the express companies are agencies organized for the purpose, at a higher price, of providing greater security and dispatch in the delivery of freight." And it would assuredly occur to any and every one that a shaft consisting of a piece of metal weighing not less than 650 pounds, which under ordinary circumstances could and would be shipped with perfect safety and at a much lower charge by railway, would not have been shipped in this unusual way and at a much higher price unless the call was urgent and some unusual result would follow by reason of delay. The facts, we think, were such as to give clear indication that the shaft was designed for present use in the mill, and that some injury of the kind alleged would likely follow from breach of the contract of shipment, and require that amount of plaintiff's damages should be considered and determined by the jury in that aspect of the matter.

It is not practicable within the compass of this opinion, already extended to an undesirable length, to refer to the numerous authorities relied upon to sustain the defendant's position. There is no substantial difference in the general principles established by any of these decisions, and the ques-

148—7

tion of ever-recurring perplexity for the courts is the correct application of these principles to the varying facts of the different cases.   To illustrate:   In *Manufacturing Co. v. Railway,* 62 Wis., p. 642, where special damages were disallowed for delay in shipping a machine, for the reason that the machine was designed for present use and for a purpose that would afford data for allowance of such damage, there was not only no evidence indicating knowledge on the part of the carrier of the special purpose alleged to have caused the loss, but there was testimony tending to show notice of an entirely different purpose. · *Cole, C. J.,* in delivering the opinion disallowing the claim, said: "The defendant certainly had no notice of the business in which the plaintiff was engaged, and did not know that this machine had been procured for fitting pipe and making nipples.   Should we presume, as we have no right to do, that the defendant had knowledge of plaintiff's business, surely we could not presume that this machine was ordered by it for immediate use."

As we have endeavored to show in the case before us, the style and title of the plaintiff firm, taken in connection with the nature and description of the implement ordered, together with the unusual mode by which the shipment was provided for, and the nature of defendant's business, by which it undertook for a greater wage to give additional assurance, both of safety and dispatch, all give notice that damages beyond the ordinary amount might be reasonably expected in case there was delay, in breach of defendant's contract.   So in the case of *Sawmill Co. v. Nettleship,* shipment of a lot of machinery from Liverpool to Vancouver's Island. · The machinery was in different boxes, and one of these, containing a portion of the machinery, was lost, preventing operations until it could be replaced by sending to England for another piece, causing a delay in operations for something like twelve months.   Damages for cost of procuring another piece were allowed, including cost of additional

freight, but profits during the period of delay were disallowed.    This was put in part on the fact that the machinery was boxed and the carrier had no knowledge of the relative importance of that contained in the box lost, or that stopping of the mill would likely follow from such loss.    Some stress was laid, too, on the fact that, owing to the length and uncertainty of a voyage of that kind, it would be unreasonable to suppose that the parties, in that mode of shipment, contemplated that the additional damages could be recovered; and the case, in both of these respects suggested, is clearly distinguished from the one we are considering.

We are not inadvertent to the fact that, in the case of *Hadley v. Baxendale* itself, the implement was the crank shaft of an engine, for lack of which the plaintiff's mill was stopped for the time.    Without adverting to the distinctions that could be suggested between the two cases, it may be observed that this great case is important rather as laying down the general principles by which damages for breach of contract may be correctly ascertained than as a decision on the facts of the particular case.    In evidence of this it may be noted that as a matter of fact the proof showed that defendant's clerk was notified that plaintiff's mill would be stopped while the shaft was being repaired.    Just why this fact was ignored in the opinion of the Judges does not appear; possibly because the notice referred to was given the day before the shaft was delivered for shipment, which is not, it seems, a very satisfactory explanation.    While this does not at all impair the value of the case as making notable declaration of the general rules applicable to such causes, it does perhaps weaken it to some extent as a decision on any given state of facts.    In any event, we are of opinion that, on the facts presented here, the case comes within the third rule of *Hadley v. Baxendale,* "That where the special circumstances are known or have been communicated to the person who breaks the contract, and where the damages complained of flow naturally from the

breach of contract under those special circumstances, then such special damages must be supposed to have been contemplated by the parties to the contract and are recoverable."

It may be well to note that the cases of *Foard v. Railroad* and *Sharpe v. Railroad, supra,* go farther perhaps than the facts as they are made to appear in the cases on appeal would seem to justify in holding the carrier liable for unusual damages by reason of special circumstances; certainly they go much farther than is required to support the disposition we make of the present appeal. It is more than likely, as the question chiefly presented in those appeals was as to the correct rule for ascertaining compensatory damages as between current profits and interest on the amount of capital unemployed, that some of the evidence tending to fix the carrier with notice was omitted, as no point was made as to notice. This is certainly true in the case of *Rocky Mount Mills v. Railroad, supra.* The writer presided at that trial, and there was evidence, both direct and from the character and quality of machinery shipped, tending to show notice, and it was omitted in the statement of case on appeal for the reason suggested, that no point as to notice was made on the trial.

On the former appeal of this cause (144 N. C., 639) we held that there was evidence to be considered by the jury on the issue as to defendant's responsibility; and in this appeal we hold, in case such responsibility is properly and correctly established, that on the testimony there is evidence which requires that the question of the amount of compensatory damages shall be referred to the jury, and there was error in the ruling that, on the facts as they now appear, only nominal damages can be recovered.

Judgment below reversed and new trial awarded.

New Trial.

WALKER and BROWN, JJ., dissenting. Dissenting opinion to be filed as of this term.