DAVIDSON DEVELOPMENT COMPANY v. SOUTHERN RAILWAY COMPANY.

(Filed 29 April, 1908).

1. Railroads — Carriers — "Order Notify" — Rights of Consignor — Wrongful Delay in Shipment—Rights of Consignee—Possession of Bill of Lading—Damages.

Ordinarily a consignor of goods to a railroad company for shipment to his own order, "notify" a proposed vendee, may dispose of them as he desires; but such right does not exist when the carrier has given a bill of lading for the goods, which was endorsed and forwarded with draft attached to the proposed vendee, who paid the draft and received the bill of lading without notice before the goods could have reached their destination in the ordinary course of shipment.

2. Railroads — Carriers — "Order Notify" — Rights of Consignee — Holder of Bill of Lading—Shipment Delayed—Liability of Carrier.

A railroad company which has issued its bill of lading for goods shipped to plaintiff's order, "notify" a proposed vendee, is liable as well as the consignor in damages for delay to the vendee, who, before the goods could have arrived in the ordinary course of shipment, has paid a draft attached to the bill of lading and received the bill of lading without notice of a subsequent diversion of the shipment made by the consignor, especially when the railroad company had notice of the consignee's rights, as evidenced by requiring the consignor to give a bond of indemnity.

3. Railroads—Carriers—Delay in Shipment—Damages—Consequential Damages—Knowledge of Carrier.

In an action to recover damages for delay in the shipment of brick to be used in constructing a store, the value of the rental of the store arising on a contract with third persons cannot be considered as an element of damages when there is no evidence that the defendant railroad company was aware of the purpose for which the brick were shipped.

4. Same—Measure of Damages.

> When the evidence in a suit against a railroad company for damages in delay in shipment of brick shows, without more, that the brick were received by the defendant for shipment, and that an unreasonable delay occurred therein, the measure of plaintiff's loss is the interest during the delay on the amount plaintiff had invested in the shipment.

ACTION tried before *Justice, J.,* and a jury, at November Term, 1907, of DAVIDSON.

By testimony offered on the part of plaintiff, and admissions of defendant company, it was made to appear that, in compliance with an order from plaintiff, John T. Watson on 28 June, 1906, delivered to the defendant at Danville, Va., two carloads of brick, taking therefor a bill of lading to his order, "notify W. H. Phillips, Lexington, N. C.," who was secretary and treasurer of plaintiff company. Said Watson drew a draft for $110.25, the price of the brick, on the plaintiff company, and attached thereto the bill of lading and forwarded the same through the banks to Lexington. On 29 or 30 June W. H. Phillips, as secretary and treasurer of the plaintiff company, paid the draft and received the bill of lading.

On 29 June and while the cars were still on the yard of the defendant at Danville, Va., Watson requested the defendant to divert the cars to another customer of his. In pursuance of this request the defendant diverted the shipment, taking from said Watson a bond to indemnify defendant for any loss or damage by reason of said diversion, and in consequence thereof the plaintiff did not receive them, and it was three weeks later before the brick could be replaced.

The plaintiff was constructing at Lexington a three-story brick building, and the brick were ordered to be used in that building. The plaintiff was unable to get the desired kind of brick elsewhere, and was delayed in the completion of its building for three weeks, this being the wrong complained of. Prior to the time in question the plaintiff had the building

rented to responsible persons to the amount or sum of over $250 per month, said rent to begin upon completion of the building.

At the time of the delay the plaintiff had invested $20,000, the lot being worth $5,000 and the building as it then stood $15,000. This money was idle for the period of delay, and the plaintiff was paying interest upon it.

There was no evidence other than that afforded by the order itself that the defendant at the time of the delivery to it by Watson of the brick knew for what they were to be used, nor did the defendant have any information or knowledge that the plaintiff was constructing any building or had any capital invested or would in any way suffer any special damages.

The court held that on the facts (1) the defendant was liable; (2) that the correct amount of damage was the rental value of the building for the three weeks' wrongful delay, to-wit, three-fourths of $250, or $187.50.

Defendant excepted to both rulings. Verdict and judgment for $187.50, and defendant appealed.

*E. E. Raper* and *W. H. Phillips* for plaintiff.
*Manly & Hendren* for defendant.

HOKE, J., after stating the facts: There is no question of the position insisted on by defendant, that the consignor of goods who has shipped them to his own order may divert them from their original destination, and as a general rule this is not changed by the fact that they are shipped with directions to notify a given person, the proposed vendee. Under such an arrangement, without more, the goods remain the property of the original owner, and he has the right to dispose of them as he desires. This right, however, as between the parties, does not exist when the carrier has given a bill of lading for the goods which has been endorsed and forwarded, with draft attached, to the proposed vendee and such vendee has paid the draft and taken over the bill of lading without notice

and before the goods would have reached their original destination in the ordinary course of shipment.

In Hutchinson on Carriers, sec. 193, the position is stated as follows: "When there has been no agreement to ship the goods which will make the delivery of them to the carrier a delivery to the consignee and vest the property in him, the shipper may, even after the delivery to the carrier and after the bill of lading has been signed and delivered or after the goods have passed from the possession of the initial carrier into that of a succeeding one, alter their destination and direct their delivery to another consignee, unless the bill of lading has been forwarded to the consignee first named or to some one for his use." And Moore on Carriers, sec. 11, is to like effect: "A carrier, in delivering goods to a party claiming them without requiring him to produce the bill of lading, always assumes the risk of the bill's having been previously transferred to an innocent purchaser. Where a common carrier delivers goods entrusted to him for carriage without production of the bill of lading describing the goods, it is liable in trover for their value to a *bona fide* holder of such bill taken for value before the delivery of the goods at destination, even where it delivered the goods to the shipper at an intermediate point."

Instances of the doctrine in its practical application will be found in *Bank v. Railway,* 132 Mo., 492; *Ratzer v. Railroad,* 64 Minn., 245. It does not clearly appear from the evidence whether the vendee paid the draft and obtained the bill of lading before or after the order to divert the shipment of the goods was given; but while this might be of importance in an action for the goods themselves between the claimant, the original vendee, and an innocent purchaser for value, as between such claimant and the carrier and the shipper the bill of lading taken and held under the circumstances indicated imports ownership. As said by *Robinson, J.,* delivering the opinion of the Court in *Bank v. Railway, supra,* "In

issuing these bills of lading, defendant said to the business and commercial world: 'We hold twenty cars of grain delivered to us by the Courier Commission Company, which will be retained by us for the company or its assigns, by endorsement in writing, and none of the grain therein will be delivered to anyone except on the surrender and cancellation of those bills of lading.' And now, after thus announcing to the world these facts by the issuance of its bills of lading, which are symbols of the property in its custody and the muniments of title thereto in the hands of the holder thereof, can it afterward say to the holder of these symbols, which represent and stand for the property itself, 'True, we said that we had the property and that we would hold it subject to be delivered only to the holder of the instruments issued by us, but we ought not now to be held to that agreement because we have carelessly but in good faith delivered the same to the original shipper'? or, what is the same, at its request, rebilled the grain to another point without this State, not requiring the production, surrender and cancellation of the original shipper's order bills of lading."

On the facts, therefore, the plaintiff had a clear right to recover for the damages suffered by reason of the wrongful delay in the shipment, either against the carrier or the shipper, for there is no claim or testimony tending to show that in ordering a new supply of brick the parties expected or intended an adjustment or surrender of plaintiff's claim for damages for the injury he had suffered. It is evident, too, that defendant did not act in ignorance of plaintiff's rights or of its own obligation, for before defendant would obey the directions of the shipper to divert the goods it required a bond of indemnity.

We are of opinion, however, that there was error on the part of the court as to the amount of damages which plaintiff is entitled to recover on the facts as they are now presented. Damages of the kind claimed in this action, *i. e.,* consequen-

tial damages, are only recoverable when they are the natural and probable consequence of the carrier's default. Hale on Damages, 256. And ordinarily such damages are only considered natural and probable when they may be reasonably supposed to have been in contemplation of the parties at the time the contract was made. Wood's Mayne on Damages, 18; *Neal v. Hardware Co.,* 122 N. C., 104. It may be, as suggested in *Tillinghast v. Cotton Mills,* 143 N. C., 274, that if the contract is still in the course of performance, as in continuing contracts of carriage, knowledge brought home to the parties during the continuance of the contract relation and in time to have prevented or reduced the damages might affect the result. But such a modification of the general rule is not called for here, as the amount of damage would be the same in either event. And for wrongful delay in the shipment of goods having a market value the damage usually supposed to be in contemplation is the difference in the value of the goods at the time when they should have been and were delivered. In other cases the value of the user of the goods may be recovered if they are in condition to use, and, in the absence of any appreciable loss from either source, the interest on the money invested in the goods themselves for the time of the wrongful delay would be the correct measure of compensation. This being the amount recoverable under the general rule, if plaintiff seeks to recover other and additional damages by reason of special circumstances a knowledge of these circumstances should be brought home to the other party. As we have said in *Tillinghast v. Cotton Mills, supra,* "If the plaintiff seeks to recover different and additional damages arising by reason of special circumstances, he is required to show that defendant had knowledge of these circumstances and of a kind from which it could be fairly and reasonably inferred that the parties contemplated that they should be considered as affecting the question of damages." Instructive cases, showing the application of this principle, will be

found in *Matthews v. Express Co.,* 138 Mass., 55; *Railway v. Ragsdale,* 46 Miss., 458; *Horne v. Railroad,* L. R., C. P., 71, 72, 583.

In the case at bar there are no facts or circumstances shown which would entitle plaintiff to a greater amount of damages than the interest on the value of the two carloads of brick for the time of the wrongful delay. There was no evidence offered that defendant company was aware that the brick were to be used in a building of any special size or kind, or a wrongful diversion would work the delay which resulted. So far as it reasonably appeared to defendant, the brick were ordered for the trade, and, in the absence of any testimony as to change in the value of the brick, the interest on the amount invested in the shipment for the three weeks, as heretofore stated, is the measure of plaintiff's loss for which defendant can be held responsible. In the cases chiefly relied on by plaintiff (*Neal v. Hardware Co., supra,* and *Rocky Mount Mills v. Railroad Co.,* 119 N. C., 693) the character of the shipments was held to be evidence of notice of special circumstances tending to make the damage claimed in those cases the natural and probable result of the wrongful delay on the part of the carrier.

There is error to defendant's prejudice, and a new trial is awarded.

Error.