VIRGINIA-CAROLINA PEANUT COMPANY *v.* ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 3 May, 1911.)

1. Carriers of Goods — Delay in Shipment — Damages—Contract—Tort—"Party Aggrieved."

On negligent delay in the shipment of goods, with common carrier acting under a *quasi*-public franchise, the person injured may sue in contract or tort; and in case of tort, the damages may be awarded under facts and conditions existing and relevant at the time the same is committed.

2. Same — Notice After Shipment — Reasonable Opportunity to Deliver.

In such action, evidence tending to fix the carrier with notice or knowledge of special circumstances affecting the question of damages, and under conditions affording fair and reasonable opportunity to avoid further delay, is competent and relevant; and the rejection of such evidence by the trial court constitutes reversible error.

3. Same—Principal and Agent—Undisclosed Principal.

In such case an undisclosed principal holding the business rights and interests under the contract of shipment may sustain the action, subject to the limitations and restrictions ordinarily prevailing in such relationship.

BROWN, J., concurring in result; WALKER, J., concurring in the opinion of MR. JUSTICE BROWN; ALLEN, J., concurring.

APPEAL from *Peebles, J.,* at the December Term, 1910, of MARTIN.

The action was to recover damages for negligent delay on the part of the defendant company in conveying a lot of machinery shipped over defendant's road. On the trial it appeared that plaintiff was a corporation doing a general business in manufacturing and cleaning of peanuts, at Williamston, N. C., and that in the latter part of August, 1907, Eli Gurganus, acting for said company, but without having informed the company of this fact, so far as the evidence shows, ordered from the Appomattox Iron Works, at Petersburg, Va., a carload of machinery for equipment of plaintiff's mill at Williamston, N. C., and had same shipped over defendant's road, taking a bill of lading therefor in his own name; that the machinery, consisting of peanut-shellers, drums, shakers and shafting, etc., and described in detail in the testimony, was mostly of a heavy order, weighing something like 8,000 pounds, and was shipped in an open car; that the distance between the two points by rail was about 140 miles, the time about two or three days, and there was negligent delay in the carriage, the machinery having been shipped 29 August, and not arriving at Williamston until 16 September. It appeared, further, that the Appomattox Iron Works were manufacturers of machinery for this purpose, at Petersburg, Va.; that the defendant road extends through Eastern North Carolina and Virginia, and large quantities of peanuts are annually shipped from this place, Williamston, over defendant's road; that from the time the machinery should have arrived plaintiff had a house rented in which to place it for the purpose of manufacturing, and a lot of hands, two of them experts, awaiting to install and operate the same, and these hands were drawing wages and necessarily kept idle for the time of the delay, and that the capital invested in the machinery was about $2,000. On the question of notice, plaintiff offered the following evidence by the witness, Gurganus: "On the first day of September, 1907, I went to the agent of the Coast Line at Williamston and notified him of the carload of peanut machinery being shipped from Petersburg, Va., and told him that the company had hired men to install this machinery, and told

him that the men were on the ground ready for work, and that
the peanut company would hold the Coast Line for damage for
all delay. I continued to go to the agent each day, till the 19th,
when machinery came, and repeated the same thing." On objec-
tion by defendant, this evidence was excluded and plaintiff
excepted. Plaintiff then offered the following evidence by J. G.
Staton, president of plaintiff company: "On the first of Septem-
ber, 1907, I went to the agent of the defendant company at
Williamston, N. C., and notified him that this carload of ma-
chinery had been shipped; told him that plaintiff company had
men hired to install this machinery, and that company would
hold defendant liable for any further delay. I told him that the
men were on the ground ready for work, and that the plant was
idle. I went to see agent every day from the first to the 15th
of September about it, and repeated the same thing to him. I
helped agent wire for machinery on the 15th of September, and
we located it in Wilmington, N. C." This was likewise excluded
and plaintiff excepted. The court charged the jury that "in no
event could they, on the evidence, allow any more than nominal
damages." Plaintiff excepted. Verdict awarding nominal dam-
ages, judgment, and plaintiff excepted and appealed.

*Martin & Critcher, Winston & Matthews for plaintiff.*
*F. S. Spruill and Harry W. Stubbs for defendant.*

HOKE, J., after stating the case. In *Harper v. Express Co.,*
148 N. C., pp. 87-90, the Court, in speaking to the question of
damages, recoverable by reason of wrongful delay in shipment
of goods, said : "Where the goods shipped have a market value,
and there is nothing to indicate the specific purpose for which
they were ordered, these damages are usually the difference in
the market value of the goods at the time for delivery, and that
when they were in fact delivered. We have so held in the case
of *Davidson Development Co. v. R. R.,* 147 N. C., 503, and
*Lee v. R. R.,* 136 N. C., 533, is to the same effect. When, how-
ever, the goods are ordered for a special purpose or for present
use in a given way, and these facts are known to the carrier, he
is responsible for the damages fairly attributable to the delay
and in reference to the purpose or the use indicated. And it is

not necessary always that those facts should be mentioned in
the negotiations, or in express terms made a part of the con-
tract, but when they are known to the carrier under such cir-
cumstances, or they are of such a character that the parties may
be fairly supposed to have them in contemplation in making the
contract, such special facts become relevant in determining the
question of damages," citing Moore on Carriers, p. 425, and
Hutchinson on Carriers, sec. 1367. The modification of the
general rule, suggested in this excerpt, is not infrequently called
for in shipments of machinery, and, under several decisions of
our Court on this subject, it may be that the facts now in
evidence require that the question of substantial compensatory
damages, arising by reason of notice or knowledge of special
circumstances had at the time of shipment, should be submitted
to the jury. *Lumber Co. v. R. R.,* 151 N. C., p. 23; *Sharpe v.
R. R.,* 130 N. C., p. 613; *Rocky Mount Mills v. R. R.,* 119
N. C., p. 693. Without final determination of this matter,
however, we are of opinion that there was error in excluding the
testimony offered by plaintiff to show definite notice of special
circumstances given after shipment made. True, the bill of
lading was issued to the witness, Gurganus, but it is also true
that he had no personal interest in the goods or their shipment,
but was acting, at the time, for the plaintiff company, "which
had purchased the machinery, paid for it, received it upon
arrival at Williamston and there paid the freight charges thereon
and installed same in its plant." From these facts we see no
reason why the plaintiff company, as undisclosed principal, did
not acquire and hold the general business rights and interests
arising from the contract and under the general principles ob-
taining in case of such a relationship. *Nicholson v. Dover,* 145
N. C., p. 20; *Barham & Owens v. Bell,* 112 N. C., p. 131;
Clark & Skyles on Agency, p. 1155; Tiffany on Agency, pp. 304,
305. In case of *Barham v. Bell, supra,* it was held: "Where a
contract, not under seal, is made with an agent in his own
name for an undisclosed principal, either the agent or principal
may sue upon it; the defendant, in the latter case, being entitled
to be placed in the same position, at the time of the disclosure
of the real principal, as if the agent had been the real con-

tracting party," and in more general terms in *Clark & Skyle,*
*supra,* it is said: "It is held, therefore, that where a person
enters into a simple contract, other than a negotiable instru-
ment, in his own name, but in fact as agent for an undisclosed
principal, the principal may come in and sue the third party on
the contract, and that this is true, not only where the agent dis-
closed the existence, but not the name of the principal, but also
where he does not even disclose the existence of the principal."
A principle undoubtedly correct, where, as in this case, neither
the personality of the agent nor the claims of the third party
against him, personally, require consideration. This then being
the position of the parties, if the nominal consignee and the
president of the plaintiff company gave the notice embodied in
the proposed evidence, and there was negligent delay on the part
of the defendant, after being afforded full and reasonable oppor-
tunity to correct the wrong, such negligence would constitute a
tort, giving the plaintiff right to recover damages on facts as
they then appeared. This is one principal difference in the ele-
ments of damages, obtaining in breach of contract and conse-
quential damages arising from a tort. In the one case damages
are recovered, as a rule, on relevant facts in the reasonable con-
templation of the parties at the time the contract is made, and
in the other on the facts existent or as they reasonably appeared
to the parties at the time of the tort committed. The obligation
of diligence imposed by the law on common carriers is continu-
ous during the entire course of the carriage, and a negligent
failure to perform such duty, causing special damage to a pas-
senger or shipper of freight, is a tort arising whenever the same
occurs. We must not be understood as holding that this conse-
quential damages, to arise by reason of special circumstances,
would commence at the very instant the notice was given to
some local agent of the company. The notice, as indicated, must
be such as to afford fair and reasonable opportunity to avoid
further delay under conditions as they existed when the notice
was received, and damages arising thereafter might then be
properly estimated under the circumstances which the notice
discloses. There is suggestion, from authoritative sources, that
in these continuous contracts of carriage, notice of special cir-

cumstances, given during the course of performance would be
relevant as affecting the question of the amount of damages
even when the action could only be considered as one for a
breach of contract. This was made by Bramwell Baron in the
case of *Gee v. R. R.,* H. & N., p. 2116 (Exch.), and referred to
in Woods Mayn on Damages. p. 35. This suggestion was ap-
plied by a Texas court, in the case of *R. R. v. Gilbert,* and was
at first affirmed on appeal, but was afterwards rejected, the
Court of Civil Appeals holding, on a rehearing, that notice
given, after contract, of shipment made should not be allowed
to affect the question. *R. R. v. Gilbert,* 4 Texas Civil Appeals,
p. 366. In a subsequent case, however, and on a different state
of facts the Supreme Court of Texas seems to have modified
this ruling. *Bourland v. R. R.,* 99 Texas, p. 407. The digest
of this case as it appears in 122 Anno. State Reports, being in
part as follows: "The rule that damages of a special or excep-
tional kind for delay in the shipment of goods cannot be recov-
ered in the absence of notice to the carrier at the time of making
the contract of carriage of the particular conditions under which
the damages are likely to arise as the result of the delay is not
*unbending* nor applicable to *every case.*" The question is not
free from difficulty, nor is it necessary to determine it on the
present appeal, for numerous and well considered decisions in
this jurisdiction are to the effect that for breach of duty in
reference to a contract of carriage, on the part of common car-
rier doing business under a corporate franchise, one having a
right by contract to enforce performance, may recover damages
for a tort and have the relief administered and his rights de-
termined as in that class of actions. *Williams v. R. R.,* 144
N. C., pp. 498-505; *Purcell v. R. R.,* 108 N. C., p. 414; *Bowers
v. R. R.,* 107 N. C., p. 721. In *Purcell's case,* and on this ques-
tion, it was held: "1. It is the duty of a common carrier to pro-
vide sufficient means of transportation for all freight and pas-
sengers which its business naturally brings to it, and an unusual
occasion by which a greater demand upon it is temporarily made
will not relieve it of the obligation, if by the use of reason-
able foresight, it could have been provided for. 2. A person
who has sustained injuries by reason of the failure of a railroad

company to provide proper means of transportation or operate
its trains as required by the statute (Code, sec. 1963), may
bring an action on contract, or in tort, independent of the
statute."

And in *Bowers' case, supra,* the ruling was as follows: "1. A
complaint alleging that the defendant, a common carrier, failed
to safely carry certain articles of freight according to contract,
and 'so negligently and carelessly conducted in regard to the
same that it was greatly damaged,' states facts sufficient to con-
stitute a tort," and in *Williams' case, supra, Associate Justice
Walker,* for the Court, said: "It is established, therefore, by the
authorities that when the carrier has wrongfully set the passen-
ger down short of or beyond his destination, or has failed to
stop for him, and has thereby imposed upon him the necessity
of reaching his destination by other means, the carrier must
respond in damages for the wrong, whether the action be
brought for the breach of the contract or for the tort, and the
rule applies in this case if the plaintiffs presented themselves at
the proper place and gave the required signal at such time as
enabled the engineer to stop the train for them at the station,"
citing 3 Hutchinson on Carriers (3 Ed.), sec. 1429. There is
nothing in the record which confines the plaintiff to recovery
for a breach of contract. On the contrary, the entire facts are
set out by the pleader, including specific statement of the special
damages claimed. And in various sections of the complaint the
delay is alleged to have been caused by the carelessness and neg-
ligence of the defendant company and its agents. In such case
the plaintiff, if the facts justify it, may recover on the theory
of tort or contract. Speaking to this question, in *Williams'
case, supra,* it is further said: "All forms of action are abolished,
and we have now but one form for the enforcement of private
rights and the redress of private wrongs which is denominated
a civil action, and the Court gives relief according to the facts
alleged and established." In the case of *Hansley v. R. R.,* 117
N. C., p. 570, a case much relied upon by the defendant, the
Court chiefly considered and passed upon the right of a passen-
ger, on a breach of contract of carriage by a common carrier, to
punitive or exemplary damages and the question involved in this

appeal was not directly presented. While the reasoning of the principal opinion in *Hansley's case* is favorable to defendant's position, the decision of the Court, reaffirming, as it did, *Purcell's case, supra,* which was an action in tort for like cause, is in support of our present ruling. The plaintiff then had a right to sue in tort, and, if his cause of action is established, recover damages under circumstances existent at the time the same was committed and the evidence offered, tending as it did to show conditions affecting the measure of his recovery, should have been received. There is nothing here said which is intended to militate against the ruling of this Court, in *Helms v. Telegraph Co.,* 143 N. C., p. 386, and other cases to same effect, "That a party who is not mentioned in a telegraph message or whose interest therein is not communicated to the company, cannot recover substantial damages for mental anguish." In *Helms' case* the contract had been finally broken and the same was no longer in the course of performance, and the question at issue being the amount of damages for "mental anguish," the personality of the party and his relationship to the subject of the message was of the substance and must be made to appear. But the principle does not necessarily obtain when redress is sought for breach of a business contract in which, as stated, the personality of the nominal parties in no way affects the matter. In such case, as heretofore said, the rights of the parties may be shown and dealt with under the ordinary doctrine that an undisclosed principal may avail himself of rights acquired by the contract of his agent. For the error in rejecting the evidence offered, the plaintiff is entitled to a new trial and it is so ordered.

New trial.

Brown, J., concurring in result. The damages recoverable in an action for a breach of contract are such as naturally flow from the breach and such special and consequential damages as are reasonably presumed to have been within the contemplation of the parties at the time the contract was entered into. *Williams v. Telegraph Co.,* 136 N. C., 82; *Johnson v. R. R.,* 140 N. C., 574. And the same rule is applied in actions for the

negligent omission in the performance of a public duty growing out of contract. *Lee v. R. R.,* 136 N. C., 533, delay in transportation of freight; *Williams v. Telegraph Co.,* 136 N. C., 82, negligence in transmitting and delivering message; *Hansley v. R. R.,* 115 N. C., 602, delay in carrying passenger. But a different rule is applicable when the cause of action is based upon a *pure tort* resulting in a wrongful invasion of plaintiff's rights of person or property. Then he may recover all such dam-ages either direct or consequential, as flow naturally and proxi-mately from the trespass. *Johnson v. R. R., supra; Gwaltney v. Timber Co.,* 115 N. C., 579; *Hatchell v. Kimbrough,* 49 N. C., 163.

In an action based upon such a tort, reasonable foresight is essential to original liability, but it has no place in determining to what consequences the liability shall attach. *Drum v. Miller,* 135 N. C., 204.

In *Lewark v. R. R.,* 137 N. C., 383, an action for damages resulting from delay in transportation, this Court states the rule to be: "When one violates his contract he is liable for such damages as are caused by the breach, or such damages, as being incidental to the breach as the natural consequence thereof, may have been in contemplation of the parties when the contract was made." In *Development Co. v. R. R.,* 147 N. C., 503, *Mr. Justice Hoke* says: "Consequential damages are only recoverable when they are the natural and probable consequences of the car-rier's default. And ordinarily such damages are only consid-ered natural and probable when they may be reasonably sup-posed to have been in contemplation of the parties at the time the contract was made." This was said in an action for negli-gent delay in transportation of freight, which was treated by the learned judge as a breach of contract, or tort growing out of contract, as was done in *Lee's case,* in *Lewark's case* and numer-ous other cases decided by this Court.

The error in the opinion of the court in the present case, I think, is in assuming that notice by the plaintiff of the particu-lar damages and subsequent delay created a liability inde-pendent of the contract entered into by Gurganus and the de-fendant. The plaintiff's right to sue is determined upon prin-

ciples of the law of agency in the creation of a contract, and yet it is suggested by the court that the damages should be assessed upon the basis of a pure tort resulting from the breach of an independent duty owed plaintiff. Plaintiff's rights having grown out of the contract, the amount of damages recoverable should be determined by the rule laid down by this Court in actions based upon tort growing out of contract. Applying that rule plaintiff could only recover such damages as were in the contemplation of the parties at the time the contract was entered into. All the cases since *Hadley v. Baxendale* fix the time the contract was made as the time when notice of special damages should be given. *Lee v. R. R.,* and cases cited *supra.* In *Hansley v. R. R.,* 115 N. C., 602, which by express terms overrules *Purcell v. R. R.,* 108 N. C., 414, quoted in the Court's opinion in this case, it is held that: "The amount recoverable for a breach of contract of carriage is limited to the damage supposed to have been in contemplation of the parties and actually caused by such breach; and the measure of damage is ordinarily not materially different whether the defendant fails to comply with the contract through inability or wilfully disregards it." And this is said by the Court, in that case, to be the rule whether the passenger sues for a breach of contract or in tort for the disregard of the duty of the carrier to the public. The result reached in *Purcell v. R. R.,* was subsequently approved in *Hansley v. R. R.,* 117 N. C., 565, on petition to rehear. "But the judgment in that case," says the Court, "should be put upon the ground that the defendant treated Purcell with indignity and contempt in rushing by the station at faster speed, when there was room for the passengers, or at least when there was evidence tending to show this."

The former decision in the *Hansley case,* that for negligent failure to transport a passenger to his destination, the passenger's right of action is *ex contractu* and not in tort, is affirmed.

In *Kennon v. Telegraph Co.,* 126 N. C., 232, the present *Chief Justice* says: "It is immaterial under our system of practice whether the action is in tort for the negligence in the discharge of a public duty or for breach of contract for prompt delivery, for the recovery in either case is compensation for the

injury done the plaintiff and which was reasonably in contemplation of the parties as the natural result of the breach of the contract or default in discharging the duty undertaken."

The plaintiff's action in this case, being based upon breach of contract or tort growing out of contract, and the damages being restricted to such as were in the contemplation of the parties when the contract was made, the evidence of notice of special damages was properly excluded. Such notice cannot affect the liability of the parties after the performance of the contract has been entered upon. But if such evidence is admitted the same result must follow, because it would be the duty of the court to instruct the jury that the notice given was insufficient to charge the defendant with liability for special damages. Where the testimony with regard to notice is uncontradicted and is clear and distinct, the question of the sufficiency of the notice is for the court. *R. R. v. Johnson & Fleming,* 94 S. W. (Tenn.), 600.

"It may be stated as the well settled rule," says Hutchinson on Carriers, sec. 1367, "that special damages can be recovered from the carrier when the transportation has been delayed only where it is shown that the shipper informed the carrier, *at the time the contract was made,* of the special circumstances requiring expedition in shipment. And although the carrier may have been notified of such special circumstances in time to have prevented a delay, if such notice was given after the contract of transportation had been entered upon, it would not operate to modify the contract or subject the carrier to liability for special damages arising from a subsequent delay. The fact that the carrier was notified of the special circumstances demanding greater diligence is thus seen to be a crucial one, and that the carrier was so informed must be alleged and proved."

"Notice to a carrier, after goods have been shipped, of circumstances which render special damages a probable result of a delay in their delivery, does not operate to modify the original contract so as to render the carrier liable for such damages, even in the event of a subsequent unreasonable delay." *Bradley v. R. R.,* 94 Wis., 44.

In *R. R. v. Johnson & Fleming,* 94 S. W., 600, *Chief Justice Beard,* of the Supreme Court of Tennessee, says: "Notice to the

carrier, after goods have been shipped, of circumstances which render special damages a probable consequence of delay, does not affect the original contract so as to render the carrier liable, although the subsequent delay is unreasonable." Upon facts similar to those presented in our case, the Wisconsin Court, in *Bradley v. R. R., supra,* says: "It is only necessary to apply a familiar principle of law in order to answer these questions. No principle of law is more firmly established than that actual damages for a breach of contract are limited to such as may be reasonably considered to have been in contemplation by the parties *at the time of such contract, as the probable result of a breach of it.* Such principle rules this case unless there is some exception thereto which will fit the special circumstances found by the jury and expressed in the questions submitted. That was obviously the view the learned circuit judge took of the matter; hence the necessity for the second question, *i. e.,* did notice to the appellant of the circumstances which rendered the damages found by the jury a probable result of the late delivery operate to modify the original contract between the parties so as to make the appellant liable in damages? Counsel for the respondent failed to bring to our attention any authority to sustain such exception to the general rule, and, indeed, we are satisfied that none can be found, and that the exigency of this particular case is not sufficiently serious and pressing to warrant us in disturbing the settled law regarding the subject, as counsel suggests that we should do."

The case of *Bourland v. R. R.,* 99 Texas, 407, is not authority for the position suggested in the opinion of the Court. It is held in that case that where notice of such circumstances as will occasion special damages is given the carrier after the contract to carry has been performed, and after the goods have accordingly arrived at their destination and are ready to be delivered, he will be liable for such special damages if he negligently fails to make delivery of the goods. In·this case the Supreme Court of Texas accepts the decision in *R. R. v. Belcher,* 89 Texas, 428, as containing a correct statement of the law upon the question of liability for special damages where notice is given after the contract has been made and transportation commenced, but

before the shipment reaches destination. In the *Belcher case* it is held that such notice is insufficient to charge the carrier with special damages. *Justice Williams,* writing the opinion in *Bourland v. R. R.,* adverts to the suggestion made by *Baron Bramwell,* in *Gee v. R. R.,* 6 H. & N., 217, referred to in the opinion of the Court and says: "The decisions have been to the contrary in cases of this character which have come to our attention, where it became necessary to pass upon the point." This dictum in the *Gee case* is referred to in section 158 of Sedgewick's work on Damages, and after quoting the language of *Baron Bramwell,* the author says: "The majority of the Court, however, took a different view. And, however reasonable the view may be in itself, another rule is firmly established. *Hadley v. Baxendale,* as we have seen, held that damages for breach of contract were limited to such as were either normal or communicated at the time of the contract." Sedgewick further says, sec. 159: "Notice must form the basis of a contract. It appears that the notice must be more than knowledge on the defendant's part of the special circumstances. It must be of such a nature that the contract was to some extent based upon the special circumstances. This appears from the language of the courts in many cases where the subject is discussed. In *Smeed v. Foord, Campbell, C. J.,* doubted whether notice could have any effect in changing the rule of damages, unless it formed part of the contract. In *British Columbia S. M. Co. v. Nettleship, Willes, J.,* said: "The mere fact of knowledge cannot increase the liability. The knowledge must be brought home to the party sought to be charged under such circumstances that he must know that the person he contracts with reasonably believes that he accepts the contract with the special condition attached to it." In *Booth v. Spuyten Duyvil R. M. Co., Church, C. J.,* stated, as his opinion, that notice of the object of the contract would not, of itself, change the measure of damages, "unless it formed the basis of an agreement." Proof of notice, of course, cannot be received to vary the contract, which always speaks for itself; it is merely an attendant circumstance, which, like any other matter in evidence, affects the consequences of the breach and the measure of recovery.

*Hadley v. Baxendale* lays no stress on the question whether the contract was founded upon or influenced by the notice; but the weight of recent authority seems to be in accordance with these opinions, to the effect that the notice must be such as that the contract was in some degree founded on it. The defendant sold goods to rig a vessel, and damages were claimed for loss of use of the vessel. The Supreme Court of Michigan said: "To create such extraordinary liability, there must in every case be something in the terms of the contract, read in the light of the surrounding circumstances, which show an intention on the part of the vendor to assume an enlarged engagement, a wider responsibility than is assumed by the vendor in ordinary contracts for the sale and delivery of merchandise."

In this case the defendant is notified, after entering upon the performance of the contract, that the special damages would result, and was for the first time notified that such damages would result to a company whose name nowhere appears in the contract of shipment and whose existence was probably unknown to the defendant. If such notice is sufficient to charge the defendant with liability for special damages, then the great case of *Hadley v. Baxendale* has power only to vex unsuspecting parties who regard its principles as established and enforcible in our courts.

The facts are not sufficient to bring this case within the decision of *Lumber Co. v. R. R.*, 151 N. C., 23, and other cases in this Court, charging the carrier with special damages for delay upon the ground that the character and circumstances of shipment were sufficient to give notice of such damages. There was nothing about this shipment to give the defendant the slightest intimation that the plaintiff company intended to conduct a peanut-cleaning business, and had employed hands to install and operate the machinery and had rented a house for that purpose. It was reasonable for the defendant to suppose that Gurganus was receiving the machinery for sale to another party, or that he was receiving it as agent for the shippers. In fact the purpose for which the shipment was intended was a pure matter of conjecture to the defendant.

The *Lumber Company case* presented the following combination of facts which this Court said was sufficient to go to the jury upon the question of notice of special damages: (1) Plaintiff's name, indicating the character of business engaged in by it; (2) the nature of the article shipped, to-wit, an edger, a machine used by saw mills, weighing about 1,000 pounds, indicating an article not of general use, but for particular purpose; (3) that the machine was shipped unboxed, uncovered and open, and thus observable by the defendant; (4) being a single machine, indicating that it was intended to be used in conjunction with other machinery; (5) the destination, being a section in which lumber was manufactured. A mere enumeration of these conditions destroys that case as an authority upon which to submit to the jury the question of special damages in this case.

For wrongful delay in the transportation of goods having a market value the damages usually supposed to be in contemplation of the parties is the difference in value of the goods at the time when they should have been delivered and when they were delivered. In the absence of appreciable loss, the interest on the money invested in the goods themselves for the time of the delay would be the correct measure. *Lee v. R. R.*, 136 N. C., 533; *Development Co. v. R. R.*, 147 N. C., 503. If the jury should find in this case that the plaintiff has been injured by the negligence of the defendant, the measure of damages should be fixed by the principle of these cases. Upon the evidence as now presented the plaintiff is not entitled to special damages. However, his Honor was in error in instructing the jury that the plaintiff could recover only nominal damages, for which there should be a new trial.

WALKER, J., concurs in this opinion.

ALLEN, J., concurring. A bill of lading is "a written acknowledgment by the common carrier of the receipt of certain goods and an agreement, for a consideration, to transport and to deliver the same at a specified place to a person named or to his order." Elliott on R. R., Vol. IV, sec. 1415.

It is then both a receipt and a contract, and there are but two stipulations in the contract: 1. To transport. 2. To deliver.

If, therefore, the shipper must rely upon the written contract and can only sue for breach of its obligations, he is without remedy if his goods are injured, or if he suffers loss by delay, if they are finally transported and delivered.

The law, however, recognizes that railroad property is in some measure devoted to a public use, and is, therefore, subject to public regulation. As was said by *Rodman, J.,* in *Branch v. R. R.,* 77 N. C., 349: "They are granted great privileges in consideration of the performance of certain duties to the public. They enjoy a virtual monopoly of the carriage of freights within a certain distance. There could not be a clearer case of private property devoted, for a valuable consideration, to a public use, and consequently subject to public regulation."

"He (the common carrier) exercises a public employment, and has duties to the public to perform." *York Co. v. R. R.,* 70 U. S., 112.

"Property does become clothed with a public interest when used in a manner to make it of public consequence and affect the public at large. When, therefore, one devotes his property to a use in which the public has an interest, he, in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created." *Munn v. Illinois,* 94 U. S.

"Railroads are common carriers and owe duties to the public." *Joy v. R. R.,* 138 U. S., 51.

These duties to the public are sometimes enforced by statute and sometimes by the principles of the common law, and they are independent of contract.

"The duties of the common carrier as such do not rest upon contracts, but are imposed by law." Elliott on R. R., Vol. IV, sec. 1454.

"The liability of a common carrier does not rest in his contract, but is a liability imposed by law. It exists independently of contract, having its foundation in the policy of the law, and it is upon this legal obligation that he is charged as carrier for the loss of property intrusted to him." *Merritt v. Earle,* 29 N. Y., 122.

What then are the duties imposed by law on a common carrier, who has received freight for transportation?

There are two: (1) To carry safely. (2) To deliver within a reasonable time.

The extent of the liability as to the first duty is clearly stated by *Justice Brown* in *Hollingsworth v. Skelding, Receiver,* 142 N. C., 247. He quotes the following extract from the opinion of *Chief Justice Faircloth,* in *Daniel v. R. R.,* 117 N. C., 602: "Carriers of passengers are insurers as to their passengers, subject to a few reasonable exceptions. They are held to exercise the greatest practicable care, the highest degree of prudence, and the utmost human skill and foresight which has been demonstrated by experience to be practicable. They are so held upon the ground of public policy, reason and safety to their patrons. The exceptions are the act of God and the public enemy. If these be the proximate cause, and without any neglect on the part of the carrier, the carrier is not liable. He is against all perils bound to do his utmost to protect and prevent injury to his passengers," and after holding that this is erroneous as applied to passengers, he says: "The rule laid down by the late *Chief Justice* applies to the transportation of freight and all classes of inanimate objects only." It should be added that there is no liability on the carrier if the injury is caused by the negligence of the shipper, or is due to the inherent qualities of the articles transported.

The second duty imposed by law is to deliver within a reasonable time, and a failure to do so is negligence. *Boner v. Steamboat,* 46 N. C., 216. The distinction as to the degree of liability in the performance of these duties is clearly stated by *Pearson, Chief Justice,* in *Boner v. Steamboat Co., supra.* He says: "It is said that the defendants are common carriers, and in regard to them the law makes an exception, and holds them liable as insurers, except against the act of God, and the King's enemies. This is so; and the question is, does their liability as insurers extend to the *time* of delivery? or is it confined to the *safe delivery* of the goods? The case before the Court, when *Lord Holt* delivered his famous opinion, concerned the *safe delivery*

of goods, and nothing was said in regard to the *time* of delivery; so that our question was left open. The reason for making an exception in regard to the safe delivery of goods, in the case of a common carrier is, that it was a matter of public policy, in order to guard against fraud and conspiracy, by which, through 'covin and collusion' the carrier might 'contrive to be robbed and divide the spoils.' It is evident that the reason for holding the common carrier liable for the *safe delivery* of goods has no relevancy or bearing upon the question of his liability as to the *time* of delivery; so there is no rule of policy making an exception in regard to the time of delivery. That falls under the general rule by which, when both parties are benefited, the bailee is liable for ordinary neglect."

On account of the fact that the goods are in possession of the carrier, and the shipper cannot go with them, and cannot know what the conduct of the carrier is, proof of delay makes out a *prima facie* case of negligence, and it is incumbent on the carrier to excuse the delay. *Parker v. R. R.*, 133 N. C., 340.

We have then in the case of a shipment of freight, a contract between the shipper and the carrier, by which the carrier has agreed to transport and to deliver, and the law has imposed on the carrier the duty to carry safely, and to deliver within a reasonable time, and our next inquiry is, what is the remedy for a breach of the duty imposed by the law? I think the shipper may, at his election, sue in contract or in tort. He may treat the obligations imposed by law as entering into and becoming a part of the contract of carriage, in which event his action would be for breach of contract, or he may sue for a breach of the public duty, which has caused him special damage, and his action would be in tort. Elliott on R. R., Vol. IV, sec. 1693, says: "Where there is a breach both of contract and of duty imposed by law, as in case of loss or injury by a common carrier, the plaintiff may elect to sue either in contract or in tort."

We are not without authority in our State that an action for a breach of duty imposed by law is in tort, and that in many cases, on the same facts, a party may sue in tort or contract.

In *Robinson v. Threadgill*, 35 N. C., 41, and in *Bond v. Hilton*, 44 N. C., 308, *Nash, Chief Justice*, says: "Where the law,

from a given statement of facts, raises an obligation to do a particular act, and there is a breach of that obligation, and a consequential damage, an action on the case founded on the tort is proper," and in *Williamson v. Dickens,* 27 N. C., 265, although the plaintiff could have sued in contract, he was allowed to sue in tort, and thereby avoid the defense of a discharge in bankruptcy.

These cases are approved in *Solomon v. Bates,* 118 N. C., 315.

It appears, therefore, that the property of the common carrier is affected with a public use; that out of this grows the power to regulate the performance of its obligations; that in the exercise of this power the law has imposed the duty when it undertakes to transport freight to carry safely and to deliver within a reasonable time; and that an action to recover damages for a breach of duty imposed by law is in tort.

This duty, as it seems to me, does not arise out of contract, but is imposed because the carrier has devoted its property in part to a public use. If so, I think the rule laid down in the opinion of the court is just, and with the limitations imposed, no hardship can arise from its application.

It requires notice to be given to the carrier, while the goods are in its possession, of the facts out of which the special damages will arise, and gives it a reasonable time after notice within which to deliver, and the carrier is not liable for the special damages unless, after notice and under the conditions then existing, it negligently fails to deliver.

The expressions in different opinions opposed to this view are based upon the case of *Hadley v. Baxendale,* which has been quoted with approval so often that it approaches rashness to question it.

I may suggest, however, that it is stated in the opinion in that case that "the only circumstances here communicated by the plaintiff at the time the contract was made were that the article to be carried was the broken shaft of a mill, and that the plaintiffs were the millers of that mill," while the report of the case, as contained in Eng. Rul. Cases, Vol. V, p. 503, shows that "the plaintiffs' servant told the clerk that *the mill was stopped and that the shaft must be sent immediately,* and in answer to the

inquiry when the shaft would be taken, the answer .was, *that if it was sent up by 12 o'clock any day, it would be delivered at Greenwich the following day.* On the following day the shaft was taken to the defendant before noon, and at the same time the defendant's clerk *was told that a special entry, if required, should be made to hasten delivery."*

It was held that the notice was not sufficient to charge the defendant with special damage. I doubt if this ruling would be sustained to-day, and think the evidence indicated that there was a contract to deliver within a particular time. The decision was rendered in 1854, within thirty years after the first steam railway began to operate in England, when railroading was in its infancy, and the facilities for transportation were limited, and while the rule adopted as to damages for breach of contract generally ought to be adhered to, it is doubtful if it was intended to apply to the contracts of common carriers under the conditions existing to-day.

It was then important for the carrier to know, at the time the goods were received, the circumstances requiring diligence, that it might prepare to meet them, while to-day the carrier is required to receive goods tendered for shipment and to be prepared to transport.

The carrier has the goods in its possession; is in the performance of a duty that is continuous until delivery, and has or ought to have the facilities for transporting, and it has the opportunity of avoiding loss by exercising reasonable diligence. It would seem that it ought to be held to this degree of responsibility.