# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

HABITAT ARCHITECTURAL GROUP, P.A.,

*Plaintiff-Appellant,*

v.

CAPITOL LODGING CORPORATION; CAPITOL LODGING DEVELOPMENT CORPORATION; CAROLINA PARTNERS I, L.L.P.,

*Defendants-Appellees.*

No. 01-1106

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
William L. Osteen, District Judge.
(CA-00-620-2)

Argued: October 29, 2001

Decided: January 23, 2002

Before WILKINSON, Chief Judge, GREGORY, Circuit Judge,
and Malcolm J. HOWARD, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** William Frank Maready, LAW OFFICES OF WILLIAM F. MAREADY, Winston-Salem, North Carolina, for Appellant.

Christopher G. Daniel, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina, for Appellees. **ON BRIEF:** Celie B. Richardson, LAW OFFICES OF WILLIAM F. MAREADY, Winston-Salem, North Carolina, for Appellant. Michael E. Ray, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Winston-Salem, North Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Appellant challenges the district court's order compelling arbitration. For the reasons stated below, we affirm.

### I.

Appellees are three interrelated corporations: Capitol Lodging Corporation, Capitol Lodging Development Corporation, and Carolina Partners I, L.L.P. (collectively "appellees"). This case asks whether one of these corporations was party to the June 5, 1995, arbitration agreement incorporated into a contract signed by the appellant, Habitat Architectural Group ("Habitat").

In 1995, Habitat entered into an agreement to provide architectural services for building Comfort Suite hotels in Winston-Salem, North Carolina. Habitat drafted a letter of agreement ("letter agreement") between the "Owner" and the "Architect" of the project. (J.A. 19-24). The letter agreement did not designate or clarify the meaning of the term "Owner," the other party to the agreement. However, the letter agreement contained a section which incorporated the American Institute of Architects' ("AIA") "Standard Form of Agreement Between Owner and Architect." (J.A. 25-35). The AIA's form contained an agreement to arbitrate. (J.A. 31).

Habitat sent the proposed letter agreement to George R. Justus ("Justus") in the care of Capitol Lodging Corporation for Justus's signature. Justus executed the agreement by signing his name in the "By" line, and then in the "Title" line provided by Habitat, Justus scrawled the abbreviation "Pres." (J.A. 24). At the time the letter agreement was executed, Justus was president of two companies: Capitol Lodging Corporation and Capitol Lodging Development Corporation.

A dispute involving Habitat's architectural services arose, and Capitol Lodging Corporation made a demand for arbitration on June 21, 1999. (J.A. 9). Habitat originally agreed to proceed to arbitrate, but two months later, Habitat began to voice concerns to opposing counsel that Capitol Lodging Corporation was not a proper party to the contract. In response to these concerns, appellees filed an amended demand for arbitration adding Capitol Lodging Development Corporation and Carolina Partners, I as claimants. (J.A. 14).

On June 1, 2000, almost one year after the original demand for arbitration was made, Habitat filed an action in state court to stay the arbitration proceedings. Habitat maintained that none of the appellees was a clear party to the arbitration agreement, and therefore, that none of the appellees had the authority to force Habitat into binding arbitration.

Appellees removed the action to the United States District Court for the Middle District of North Carolina on June 1, 2000, and filed a motion to dismiss, or in the alternative, for summary judgment on August 7, 2000. (J.A. 36-41). After holding a hearing, the Honorable William L. Osteen granted appellees' motion for summary judgment and ordered the parties to proceed to arbitration. (J.A. 211-218).

Habitat appeals the district court's order compelling arbitration. For the reasons stated below, we affirm the district court's decision.

## II.

Under the Federal Arbitration Act ("FAA"), a court must stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C.

§ 3. Because ascertaining the scope of an arbitration agreement is primarily a task of contract interpretation, a district court's determination of the arbitrability of a dispute is reviewed *de novo*. *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998).

However, in applying principles of contract interpretation, the court must give appropriate deference to the liberal federal policy favoring arbitration. *Volt Info. Sciences v. Board of Trustees*, 489 U.S. 468, 475-76 (1989) (internal citations omitted); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). In determining whether the parties agreed to arbitrate their disputes, and hence, whether the FAA governs the agreement, courts apply state law principles governing contract formation. *First Option of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Therefore, we are required to determine whether Habitat entered into an agreement to arbitrate with any of the appellees under North Carolina law.

The court first notes that had Habitat been overly concerned about the owner's identity, it could have made inquires prior to the parties' dispute. Instead, Habitat's interest in the owner's identity did not surface until appellees forced Habitat into arbitration, and Habitat needed a convenient way to escape arbitration. Habitat concedes that it agreed to arbitrate when it signed the letter agreement and that the dispute falls within the arbitration agreement. While admitting that it has agreed to arbitrate this dispute with someone, Habitat has failed to provide a clear answer as to whom Habitat believes that person or entity to be. Instead, appellant contends that the court cannot compel arbitration because Habitat does not know with whom it agreed to arbitrate.

During oral arguments, appellant contended that it agreed to arbitrate the dispute with George Justus in his individual capacity. This argument, however, is foreclosed by both the evidence and admissions by appellant's counsel. Habitat's letter agreement incorporating a standardized arbitration clause contained a "Title" line which Justus filled with the abbreviation, "Pres.," clearly indicating that Justus was acting in his representative capacity. When pressed by the district court during oral arguments, counsel for appellant admitted as much. (J.A. 147).

As an alternative argument, Habitat maintained that because it did not know with whom it was contracting at the time it entered into the agreement, arbitration cannot be compelled. It is well established under North Carolina law that a party does not have to be positively identified for a contract to exist or for the previously unknown party to enforce the contract. *See Virginia-Carolina Peanut Co. v. Atlantic Coast Line R.R.*, 71 S.E. 71, 72 (N.C. 1911) ("[W]here a person enters into a simple contract . . . as agent for an undisclosed principal, the principal may come in and sue the third party on the contract . . . not only where the agent disclosed the existence, but not the name of the principal, but also where he does not even disclose the existence of the principal." (citations omitted)); *see also Woodard v. Stieff*, 87 S.E. 955, 955 (N.C. 1916) ("It is a well established rule of law that when a contract, not under seal, is made with an agent in his own name for an undisclosed principal, either the agent or the principal may sue upon it." (citations omitted)).

Appellant's argument that arbitration agreements should be held to more stringent standards of contract formation than other types of contracts undermines the clear federal policy supporting arbitration and would fundamentally alter state law principles governing contract formation. We therefore hold that absent normal defenses to contract formation, an agreement to arbitrate cannot be defeated by one party's assertion that it did not know the precise identity of the party with whom it contracted. Thus, the point of contention is not whether Habitat knew whom it was contracting with at the time it signed the agreement, but instead if the evidence supports the district court's conclusion that one of the appellees was party to the contract. The court is of opinion that it does.

In this case, the district court, applying North Carolina law, properly determined that the term "Owner" was not clearly designated in the letter agreement. *Piedmont Bank & Trust Co. v. Stevenson*, 339 S.E.2d 49, 52 (N.C. Ct. App. 1986). The court next proceeded to clarify the parties' intent by considering outside extrinsic evidence, keeping in mind the following legal principles: 1) North Carolina law requires that ambiguous terms be construed against Habitat, the party who drafted the contract, *Federal Realty Inv. Trust v. Belk-Tyler*, 289 S.E.2d 145, 148 (N.C. Ct. App. 1982), and 2) North Carolina also has a strong public policy favoring arbitration which resolves doubt con-

cerning the existence of an arbitration agreement in favor of arbitration. *Martin v. Vance*, 514 S.E.2d 306, 309 (N.C. Ct. App. 1999).

Based on the evidence presented, the district court properly concluded that ambiguity concerning the term "Owner" could be resolved from the record. First, Habitat knew or should have known that Justus signed the letter agreement as a representative of an entity. As Justus was president of two companies at the time the contract was formed, the only options were Capitol Lodging Corporation and Capitol Lodging Developing Corporation, both parties to this action. The hotels were built on property owned by Capitol Lodging Development Corporation's general partner, Carolina Partners. Additionally, Habitat accepted payments from Carolina Partners. As general partners, Capitol Lodging Development Corporation and Carolina Partners were entitled to act on one another's behalf. The district court's conclusion that Justus signed the letter agreement on behalf of Capitol Lodging Development Corporation is supported by the record.

Turning to alternative interpretations of the ambiguous term, Habitat's refusal to present plausible evidence to contradict appellees' position was key to the district court's decision. When pressed to identify who it believed the other contract party was, Habitat's strategy was to plead ignorance. As discussed above, Habitat cannot escape a contract through its own lack of knowledge as to a party's identity. Instead, when presented with credible evidence that the owner's identity was ascertainable, Habitat should have asserted who it believed the owner to be. This was obviously a position Habitat wished to avoid because to have done so would have forced Habitat into arbitration. As Habitat failed to provide any credible alternatives as to the other contracting party's identity, the evidence mandated the district court's conclusion that the arbitration agreement was between Capitol Lodging Development Corporation and Habitat. Therefore, the district court properly compelled arbitration.

Finding no error, we affirm the district court's opinion.

*AFFIRMED*